Great. Thank you, Your Honor. My name is Deborah Lovey, and I'm here on behalf of the plaintiff appellant, George Souliotes. Reading the defendant's briefs, one would think that this case was before the court on summary judgment. Defendants cite almost exclusively to summary judgment cases with summary judgment burdens and standards, and they rely on over 600 pages of transcripts and evidence appended to the brief. This is a 12B6 case. Applying the correct law, it's clear that plaintiff has properly pled his claims. Under Lee v. City of Los Angeles, this Court may not take judicial notice of factual inferences to be drawn from the evidence in order to dispute the allegations in the complaint. And with that precept in mind, the bulk of defendants' arguments on appeal fail. I'd like to first talk about the fabrication of evidence claim, the Devereux claims. The defendants are not entitled to refute the facts that we have alleged, and they're not entitled to do so with extrinsic evidence. The complaint plausibly alleges defendants' fabrication of the arson allegation. Roberts. What new facts have you learned since the end of the second trial that you say calls into question the, I guess, legitimacy of the evidence that was presented at trial? What new facts? Not conclusions. What facts? Well, the facts that are alleged in the complaint are that ---- Consist of what? That's my problem with your complaint, frankly, is that it doesn't contain much in the way of factual material. It's long on generalized conclusions. But I'm asking you very specifically, what particular facts have you learned since the trial ended that now calls into question? Let's actually start with Sandoval's I.D. Tell me about that. What have you learned? What new facts? Okay. Well, we know that Sandoval, that the allegation ---- let me start with the allegation in the complaint with regard to Sandoval's identification, is that the defendants in their police report changed Sandoval's initial description. She initially described a vehicle and a person that were not plaintiff, and then the defendants changed that initial description in their reports. Okay. So just hang on, because, of course, some of that came out during the trial, and that's why I'm asking what's new that you've learned since the end of the second trial. So specifically, for example, Sandoval said that the suspect met description X and Y. That fact never came out during the trial, and it now turns out ---- I'd like to know, you know, what the source is. It now turns out that what she really said was suspect fit A and B. What in the way of new facts like that do you have? Well, we ---- at this point, I guess I'm not really clear on why this question comes up. At this point, we're entitled, as long as we're making plausible allegations with factual basis, you know, plausible, we're alleging plausible facts, we don't have to plead our evidence at this point. So we have ---- You don't have to plead evidence, but you have to plead facts that give rise to an inference that something was falsified. And so if you ---- if all you say in your complaint, for example, is that she said the person was in his 30s or 40s, well, that fact came out at trial, didn't it? It's more than that. So we know for a fact, for instance, that the person that she originally saw, when you're crediting our complaint, was not plaintiff, that she saw somebody who was not plaintiff and was not his vehicle. And those are facts that we need to assume for the purpose of this complaint. So knowing that, knowing that the defendants took all sorts of steps to fabricate that this was an arson and that this was the end to change her opinion on whether or not plaintiff was indeed the person in the vehicle that she saw, when you make those inferences, those are inferences that support the ---- But you haven't said any facts from which an inference can be drawn. What are the facts that have come out since the end of the second trial? The facts, as we allege them, are that the defendants changed the original report of what it was she said she saw. Okay. Because she said originally what, and then what is the true facts now? Well, there's a Brady claim, so we don't have the initial recording. We don't have the initial sketch. We know that she described somebody who was not plaintiff. We know that the ---- that we allege that the police reports buried that fact, lied about that fact. What fact? I'm just still waiting for the facts that are there. The fact that she described someone who did not match plaintiff's description. She described someone who was different from plaintiff. And the defendants in their police reports changed that in order to make it sound as if she were identifying plaintiff and identifying her vehicle. She initially, the first time she looked at his vehicle, she said, no, that's not it. That fact was ---- came out at trial. That's what I'm saying. It's not new. That is not new factual material. The reason why plaintiff was charged, convicted, was based on the falsification of evidence. And when you isolate, when you look at that, for instance, I would like very much to couple it with the fabrication of the arson finding itself, okay? Our complaint alleges that this was an accidental fire and that the defendants, upon seeing it, knew that this was an accidental fire, and that they changed their report and changed their presentation of it to make it an arson. So when you look at those two things together, the changing of the identification and the creating of what was an accidental fire into an arson, those are enough to allege a Devereux claim. It's fabrication of evidence, and it's intent. I want to make sure my colleagues have a chance to ask you questions. I have others, but let me stop. Well, okay, so I'm ---- Go ahead. Okay, so let me ask you about the opinion then, because I guess, tell me why your opponents are wrong in saying that. It's one thing to say that facts are fabricated, but it's kind of hard to say that an opinion has been fabricated unless what you're alleging is that the person who offers the opinion didn't actually subjectively believe that it was true, right? Which is what we allege. Okay. And what are the facts you've discovered since the end of the second trial that support that, that would allow someone to draw that inference? Because, again, all I ---- when I read your complaint, all it says is the bare conclusion that these people made up this opinion. And I say, okay, well, what are the facts from which we're supposed to draw that inference? So you draw the inference that they made up this opinion based on the fact that they ignored the safety, the evaluation standards of the time. They made the opinion before they ever set foot in the building. They fabricated a motive. They altered the witness in order to try and have her identify him. You have evidence that we have or you have, I'm sorry, allegations that support an intent to ---- so paragraph 33 says that based on their training and experience, the defendants knew that the fire was not an arson. That's the proper allegation of, you know, this was a lie, and that's comparable to the allegations that were found sufficient in cases like Galbraith and Gregory and Stinson that we talk about. And then we have the allegations underneath it as to why that's a plausible allegation. They didn't set foot. They ignored the science. They ignored the safety standards. Sotomayor, can I ask a question? Because this is a sad case, a tragic case in many original conviction, is that correct? Yes. And it was done on basis of ineffective assistance of counsel? That's correct. What was the ineffectiveness that was the basis of that claim? In the first trial, there was quite a bit of scientific evidence to rebut the motive evidence and to rebut the arson claims, and that evidence wasn't presented in the second trial. The second trial, none of the ---- most of the witnesses that were called in the first trial were not called in the second trial. And that those are ---- that's a different ---- that is different in nature from what you are alleging in the Second Amendment complaint? I guess I'm having a hard time understanding why that matters for a Devereux claim. I mean, the only thing for ---- in order to state a Devereux claim, you have to have the defendants fabricating evidence, and you have to have evidence of intent. And when you have those two things, you've stated a Devereux claim. Okay. But I'm sorry to keep hammering you on this because this is my problem. I have a problem with your case. Normally, in this kind of case, once someone has been exonerated, let's say, right, after being wrongfully convicted, some new fact has come out, a witness recants this, you know, you have something to put your hands on in terms of, I don't know, they claim they found the bloody glove here, and in fact, it was found over there, whatever. You don't have anything like that here, from what I can tell, because what I would say, I guess, with respect to the arson opinion, is that all of that was contested at the first trial. And in fact, as you said, the defense put on its own experts. So all of that was laid out. And I'm guessing, still left, what's new that you've discovered about the nature of the opinion that they offered, these experts offered, that calls into question whether they subjectively believed it to be true? Respectfully, Your Honor, there's nothing that requires ---- while that is what the case traditionally looks like, there's nothing in the law that requires that. On the civil side, you have a very different burden of proof than you have on the criminal side. You have the elements of a Devereux claim. If we meet the elements, if we adequately plead and plausibly plead it ---- Roberts But that's what we're discussing. I'm saying you have not adequately pleaded it, because you can't come in and just say somebody gave an opinion at trial, and I claim that they didn't they did not subjectively believe that to be true, and that's the extent of my allegation. You have to give us some facts from which we can draw that inference. Absolutely. So the facts that we plead that support that inference are that the science of that time, with their training, their experience, the science, their failure to even walk into the building, all support the fact that they knew they were lying. Those allegations that they ignored the training and the fire standards, you know, their national standards about how one looks at a fire, they ignored all that. It was like reading tea leaves. They just walked up to the site. Our allegations are they walked up, they looked, and they said this was an arson. And then they fabricated motive. They fabricated ---- Roberts Hold on. I don't think you get to just lump everyone in like that. I mean, I know you've alleged a conspiracy. I don't think you've adequately done that. But I'm talking about the arson experts. They did not make up this stuff about the financial motive. They went, and apparently based on whatever one does to investigate the origins of a fire, they gave an opinion. That opinion was, I think, attacked pretty severely at trial, right? The very things that you're pointing to now were brought out. They nonetheless adhered to that opinion during the second trial, right? So ---- Sotomayor, those sorts of opinions can be ---- I mean, this is no different than Stinson or Gregory or Galbraith, the cases where you have experts who are offering what they're calling an opinion. But that no reasonable expert actually would have believed. And the allegation is they lied about it. And you ---- you ---- underneath it, you plead, why do we ---- you know, what supports the fact that they lied. And if you credit the allegations that they didn't even do a real exam ---- a meaningful examination, they went against what all their teaching and standards would have been, if you credit those, that supports the allegation for this, the pleading stage. And then later, there's discovery. And maybe we won't be able to prove these claims. But the question here is, did we plead them? And I ---- I think the allegations underneath about them ignoring the standards are enough to make this a plausible allegation. I would love to touch quickly on suppression of the exculpatory evidence, the Brady claim, if I may. Again, you have the elements here are all polite. You have the suppression and the complaint alleges that the defendants withheld the sketch and the recorded evidence or the recorded interview. Roberts. Let's again talk specifics, because that, I think, is the defect in your complaint on this point. And I'm not ---- I'm saying ---- I'm calling it as a defect. I'm saying that's ---- I'm having a ---- I'm having trouble, and I'm hoping you'll help me get over that. That's what this is about. To ---- for us to plausibly infer that the evidence that you say was suppressed was material, don't we need to know something specific about the nature of what supposedly was in this sketch or what supposedly was in this recording? I take it that you don't have either of those items. You've never seen them. So I guess, again, I'm left wondering, on what basis are you making any kind of factual allegation about what's different that was contained in those materials versus what already came out at the trial in terms of the inconsistencies in Sandoval's I.D.? And, again, I think that respectfully is the wrong standard. The question is whether we pled something underneath it to ---- from which you can infer that this was evidence that was favorable. You have the fact that the defendant suppressed it. You have the fact that they didn't even document its existence. You have the fact that we know that the first identification, she said, no, that's not the vehicle I saw, and that they then altered that by ---- with a very suggestive line-up. And we know it's suggestive. We allege it's suggestive. You need to accept it. But the jury heard all that. That's what I'm saying. That's not suppressed evidence. You've got to tell us specifically. And, again, that's why I just say, normally you come in and you say, the witness ---- you know, they claim the witness gave this description. Actually, the true description was something totally different. And had we had that and been able to cross-examine Sandoval with that, we would have been able to destroy her I.D. But you haven't given us the underlying facts from which we can draw that inference. We've given you the fact ---- I mean, they were not allowed to cross-examine her with her sketch or her audio recording because we didn't have those. So that cross-examination did not happen. And had that happened, the complaint alleges that that would have changed that. That would have been a game-changer. Sotomayor, you can't just ---- Based on the fact that they suppressed it, they didn't even document it, which suggests ---- I mean, why would you not document it if it was ---- except if you wanted to hide it? Why else would you not mention in any report that you recorded this interview unless it was exculpatory evidence that you were hiding? That's a reasonable inference to make from the fact that this evidence was buried in the way it was. You'll have some time for me, but don't worry. Okay. Do you have more on Brady? Because I have one question for you on malicious prosecution. I would love to take any questions you have, Your Honor. Please. So on malicious prosecution, don't ---- no need to be discouraged. I'm just ---- I have ---- I mean, I agree completely with Judge Schroeder. This is a tragic case. And I guess, frankly, I ---- given everything that happened during the habeas proceedings, I just ---- when I finally turned to reading your complaint, I was a little bit puzzled as to why there's not more there, there. So that's why I'm asking you all these questions. That's my problem. On malicious prosecution, do you ---- do you agree that basically that claim sort of rises or falls with the fabrication allegations? Because otherwise, it seems to me we have a probable cause finding that would otherwise cut off this claim. You can get around that if you can show that, in fact, some of the evidence presented at the prelim was fabricated. But doesn't that mean that you've got to basically prevail on the fabrication claims to have any hope of going forward on malicious prosecution? Putting aside this favorable termination thing altogether. All right. Putting aside favorable termination, which we argue is a summary judgment issue, I think, you know, again, I think when you credit our allegations, there is a question of fact about ---- on the probable cause as well. I understand how you're making that connection, but I think that there are enough allegations here. Part of what troubles me about the paradigm you have set up are the different burdens at each stage. So, for instance, what the jury finds at a, you know, beyond the reasonable doubt standard is very different than the pre ---- than the probable cause finding. There is a probable cause finding at a prelim. California law says normally if that stands, you're out of luck because it's you're basically by virtue of issue preclusion or the like, right? An exception, of course, exists if some of that evidence was fabricated. And all I'm saying is that don't you pretty much have to prevail on your fabrication claims to get around the probable cause finding at the prelim in order for this claim to go forward? We have to have alleged that there was some fabrication on which the ---- that the prosecutor would have ---- on which the prosecutor was relying. Right. And that's just your fabrication of evidence claims. So if for some reason you didn't succeed on getting 12b6 dismissal reversed on those claims, you ---- would you concede that the malicious prosecution claim can't go forward? I don't know how it could. I think in both cases you need to have some viable allegations of fabrication. Okay. One last question, then, on favorable termination. Yes. So that ---- that court of appeal case that they cite involving the guilty plea involving the sexual battery, why is that not on point? In Cote, when there was a guilty plea, the guilty plea ---- what the guilty plea was for was involved conduct that was necessarily a subset of the conduct for which he pled guilty. Here you have no overlapping conduct. What Mr. Soliotis pled guilty to is not having an operable smoke detector. You can have murder and you can have arson irrespective of any kind of conduct that has to do with smoke detectors. You cannot have rape or sodomy without unwanted sexual touch. And that's what makes the Cote case different from this case. I mean, yes, that's an accurate ---- that's from a descriptive standpoint. But I'm talking about the underlying legal principles, right, that motivate the whole favorable termination requirement. It's ---- what we don't want is for the parties basically, both sides, to realize that there's risk, and rather than roll the dice and try to get 100 percent if they want, they meet somewhere in the middle. And when that occurs, as I understand the California cases, we say, no, that doesn't count, because there hasn't been some determination that, let's say, your client is actually innocent, right? And this seems the same thing. Your client, for totally understandable reasons, decided to take the plea offer. I would have done the same thing myself. But what that deprived him of is the opportunity to actually show that he was going to be vindicated, right? And that may be the case, or if the court were to allow us to proceed in summary judgment, there might be evidence that, no, that's not why he went forward. And that's exactly the Lee case. The Lee case is really, really on point. You had there a client pleading to, you know, he was waiving his rights. And the Court said, well, wait a minute. The allegations in the complaint deny this waiver, even though, you know, if you read the transcript, that's what it says. And we can't use the extrinsic evidence at the pleading stage in order to prove that. We have all sorts of evidence that we could produce on summary judgment, and it becomes a question of fact. And if you look at the post-Crawley cases, they all say that they'll take it to summary judgment and allow for the plaintiff to dispute whether or not it actually was a waiver. Roberts. Okay. Let's stop there. We'll definitely give you a couple minutes for rebuttal, but let's hear from the defense. May it please the Court. Blake Loebs for defendants and appellees. Your Honor, I think that you hit on exactly the right issues in your questions about what's missing from this complaint, but there's something else that I think that's missing. Not only don't they plead facts about something that happened after the trials, they don't even plead the sufficient facts about what happened during the trial. And it is odd that that's the nature of the pleadings, given that they had three chances to amend. The district court judge specifically said, you've got to tell them which defendants made these false statements. You have to tell them which reports. But more importantly, what is it about what they said that's false? How did they change their ---- Let's start with the arson expert. You heard your opponent's argument here. They say that they completely disregarded the prevailing standards in the science at the time. Didn't bother to do an actual investigation. Just showed up and immediately said, this is arson. Why isn't that enough for ---- I mean, if we take it that they ---- any competent ---- what are these people? Are these people called whatever? What's their ---- I would call them arson investigators. Arson investigators. For lack of a better term. Any competent arson investigator in this situation would have done the following ten things. These people did none of them, and yet they gave this opinion that they must have known was false. Why isn't that enough to get past the 12B6 dismissal? Well, first, they didn't plead that. They pled ---- first, they said they ---- they ---- when they arrived, when the lead inspector arrived, he believed there was arson. They didn't say what their basis for alleging that was, the facts that would allege that that to be the case. And in their complaint, they have facts that would suggest that would be good reason for him to believe that it's arson when he first arrived. In their complaint, they allege that before the arson investigator arrived, Ms. Sandoval went and tracked down the first officer who was there and told him that she saw a vehicle pull up to the house at 3 in the morning, get out with a pillowcase full of something, go behind the house, and then come back out with an empty pillowcase, go in the vehicle, and leave, and then the house burst into flames. That is evidence of arson, and that would be evidence of arson they would have before ---- Well, I don't need an expert to help me with that. I assumed an arson investigator brings some other scientific expertise. That seems to me an irrelevant fact to forming an expert opinion. That's you and I can draw the inference from the facts you just described. We don't need arson investigator, you know, Smith, to tell us that. So I'm talking about the underlying science that they were relying upon, right? There were standards in place that they completely disregarded at the time, I gather? Well, they don't actually allege that. What they allege is that in 1992, the National Fire Protection Association, not a national agency, not an agency they allege has any authority over California or has any requirement in Modesto as to what rules they follow, they allege that agency promulgated some guidelines in 1992, and that these investigators in Modesto, California, didn't follow those guidelines. They don't say how they didn't follow them. They don't say, for example, the guideline says you need to do this, this, and this, and it's universally accepted, and it's required in California, and these investigators ignored it. They don't allege that at all. They just allege these guidelines existed without saying how important the guidelines are, without saying anything about how they're universally accepted. They just throw them out there. But more importantly, they don't say what they did that's contrary to the guidelines. They just say they didn't follow the guidelines. And they also don't allege that had they followed the guidelines, they would have found that this fire was caused by accident. They just say it wouldn't have supported the finding of arsenic. Why did the State then concede during the habeas proceedings that actually there's you can't tell? I take it the science on that front hasn't changed. Put aside the shoe stuff. I understand the shoe stuff, maybe something's changed. But on the origin of the fire, you know, examining the burn pattern, whatever, all of that, all of that stuff is still the same, right? And yet the State concedes that actually whatever they said back in, I can't remember what year this happened. 1992 was when they promulgated it. No, no. The year of the trial. 1999, 2000. 1997. They're saying that actually whatever they said is complete junk. So why isn't that, why doesn't that give us some basis to infer, at least, that maybe these guys did make this up? They didn't really have a sound scientific basis for giving the opinion they did. What happened was there was 18 years or 17 years intervening in which that's when the science community had a more of a consensus about what the nature would be for investigating fire science. It was not in 1997. That's why they don't allege it. They allege that there were these standards promoted by this group, and it took a while for those to be accepted. But I don't even know what specific standards they're questioning here. And so that's the issue. And that's why when this case was tried, that wasn't the argument, that you're not following the NFPA standards. That wasn't the issue. They just had a separate expert who had his own way of evaluating arson. So that's something developed over a long period of time, and it wasn't unique to Modesto. It was throughout the country in terms of the evolution of fire science. And that's why they don't allege that it was that evolved at that time. But they specifically, if they would have said there was a specific finding that was incorrect. And if you look at the other cases that are cited that relate to findings by experts, almost all of them have the expert manipulating some fact, you know, changing the bite mark identification, or not, you know, saying they examined in the strangulation case, they examined someone's neck when they didn't. Those are false fabricated reports because they're fabricated evidence. There isn't a single case that they cite or we've found. About the car. I'm sorry? What about the evidence with respect to the car? With what respect, Your Honor? Isn't there a problem with the color of the car, the description of the car? You know, they don't really allege that. I mean, that's what we thought they might have been referring to when they mentioned a report. I mean, we were struggling through three pleadings to say, what report are you talking about? And what are you saying is wrong with the report? And they refused to tell us. We guessed, is it this report from Mr. Reicher where he said, described the car as beige versus white? And they said, they disavowed, said, no, we're not, we don't have to tell you what report it is. If they did that, then we could look at some of these other cases, say, look, just a difference in phrasing can't be enough to show deliberate fabrication. If someone says that a finding is consistent versus positive, the cases have said that's not enough. So if their case was about, in this report, they said the car was white, but the witness, you know, says, no, no, I told them it was beige, they wrote down the wrong thing. We could discuss that, but they don't allege that. That's nowhere in their complaint. And we don't even know which of the eight individual defendants they're talking about, about making these accusations. We have the traffic officer on scene as one of the defendants. We have four detectives, all with various duties. We have two fire inspectors, and they're all alleged to have done everything. They're all alleged to have fabricated arson reports. They're all alleged to have not described properly what Ms. Sandoval told them. But we don't know. But we're on 12b-6. There haven't, you know, we haven't, they haven't, there haven't, has there been any discovery or? Well, not in this case. But in the 18 years they've litigated this case, two trials have lasted over two months. The habeas opinions themselves are over 200 pages long. There's no reason they can't tell us what they're accusing these officers of doing. And Iqbal requires that, as does Tombly. You have to plead the facts that would put them on notice of what they did that was wrong. How can Officer Pimentel even know what he's accused of being done wrong? He was the traffic officer that Ms. Sandoval came up to and gave her report about the fire. What did he do? He's a lead, he's involved, he's one of the individual defendants, all eight, in every cause of action. And we asked them repeatedly, said, just tell us what it is the individuals did wrong that you think, what they did, what report, and then we can look at, we can, then we can have a discussion about whether it was material, whether it mattered, whether it was fabrication. But because they do not have those facts, I mean, 18 years of litigant in this case, they didn't come up with any of those facts. Nothing new happened after the trial. They're trying to, through vague pleading, avoid the facts in this case that showed that there was no, that the trial was fair and there is no due process claim against any of the individuals. They're trying to use vague allegations to avoid those conclusions. Any time they have a specific allegation, we can show that's not enough. Nothing new happened, specifically, similarly with the Brady issues. One of the issues that I think that is dispositive of the Brady-Youngblood claim is they actually plead in their complaint that there are essential elements under the Brady claim or comparable facts under the Youngblood claim that they had at the trial. The cases are clear that if there's a recording that's lost or suppressed, that doesn't necessarily mean you can show that you had an unfair trial. You have to show that you didn't have comparable evidence, meaning the cases are clear, access to the witnesses, which they had, or under the Youngblood claim or the Brady, you didn't have the essential facts, which is the same thing, access to the same witnesses. That's the essence of suppression. No, I don't think you're right about that. I mean, if they thought they were alleging is that Ms. Sandoval gave a completely different description, put aside, you know, the person was in their 30s or 40s, I don't know, if they were, you know, 8 feet tall, turns out, you know, their client is 5'5'' or something. I mean, if Ms. Sandoval gave that initial description to the police, the police either had a recording or had some report, and did not turn it over so that Ms. Sandoval could not have been cross-examined on those facts, and that evidence is now destroyed, there isn't anything comparable they could turn to. Even just having an opportunity to cross-examine Ms. Sandoval is not enough, right? I think that I disagree, Your Honor, that there are several cases, and we cite them in our brief, I'll give you just one. The Elmore case for the Youngblood standard specifically has a situation where a recording was destroyed, and they said you need to cross-examine. Breyer. Because it doesn't matter if the evidence is no longer with us. If it existed at one point, the State had an obligation to turn it over. It clearly was exculpatory. If she really did describe somebody totally different, and then, you know, they were left to cross-examine her with basically no material to work with, that's a Brady violation. It doesn't matter if they've since destroyed the underlying evidence. So I'm just talking about a straight Brady claim. The Todd case, for example, and we cite at least three or four where exactly that situation happened, where they had a recording that was destroyed or lost, and they argued, hey, you didn't turn that recording over to us. You should have. And, you know, they say, well, you had these witnesses you can talk to, you can interview them, you cross-examine them, and that would be what the substance of the recording would have been about. And the argument is that's enough. They said, no, no, no, we need to be able to hear the voice of the individual. And the Court said, no, that's not that's not that's not that's not enough. You had you had comparable. I'm talking about the fact that the person gave a contrary description, right? You don't, if you don't, if that wasn't produced to you, you don't have that material to cross-examine. I see what you're saying, that if the recording is like the sole evidence of the fact of the contrary statement. And I guess that's where we have the problem here, because that recording happened, if it happened, with Ms. Sandoval, who's giving the recording, so you can ask her what she said. And you have the notes of the officers about what she was saying, and you have the officers that you can interview about what was said. The only reason they can allege there's anything about that recording, if it existed and if it had anything on it, that would be at all of value to them is based on what people at the time said happened during that statement. It's by definition would be the essential elements, because they have nothing else. They don't have anything that happened afterwards. Like they said, you know what, Ms. Sandoval came in and said, you know, in that recording I said this. They don't have that evidence, which is frequently what you have in the Brady cases. They don't have anything like that. All they have is at the time, and it was part of the trial, she said something different initially than she said later. That was, she was cross-examined for two days about that. And they knew that because the officers took notes. They knew that because she admitted to saying something a little bit different earlier than later. And now they say, well, if we had a recording about the different things she said, that'd be better for us. Well, why do you think it would be even helpful? Oh, because the officers at the time recorded that she said he was in his late 30s versus he was 56. Why does, why do we know that? We know that because they had the essential facts at the time, and she was cross-examined on those issues, which they have in their pleadings. And that's the fundamental problem with the Brady claim, is they don't, they can't show that they didn't have the essential facts. The access to the witnesses and the examination of the witness, and more fundamentally, as you pointed out, they're just guessing that this recording would have anything else or anything different that would be of any valuable value to them. Well, what do you understand to be the difference between the second amended complaint and the original complaint? The original complaint or the First Amendment? The First Amendment. Because I'd have to go back and check. Whichever, the district court dismissed the first, and then there was a second that wasn't opposed, and then we had the Rule 60. But what's the difference between the first and the second? I think there's functionally none. They changed almost nothing. Actually, we submitted to the Court a red-line comparison to show how it was almost wasn't different at all. And I believe in the reply, the appellants admit that the reason, and they argued about the First Amendment complaint instead of the second, because there's really no difference. So it's really about, you know, we discussed the second amended complaint because that would be the operative pleading, just to make sure we're clear. But it's really the same. We tried to cite any subtle differences that there were, but nothing functional. And this was after that, you know, the First Amendment complaint was dismissed with a very long, detailed order by the court saying, you need to tell them which reports, you need to tell them which individuals and what they did, so we can There's something wrong with the arson report. You have to tell them that. And the court even said, you know, I'm not telling this anymore. I've told you this several times. This is the last time. This is how you have to amend your complaint. And they refused to do it. The basis for the Rule 60 motion was what, as you understand? The basis for the Rule 60 motion? Well, they failed to file an opposition to our motion to dismiss the second amendment complaint until they wanted to file it 52 days later, and the court found that that was not excusable neglect. And they filed a Rule 60 motion to be able to file their opposition. And I think that they've argued, and I think agree, that's moot, because they're conceding that they're not going to ask for leave to amend. So their complaint, their case, rise or falls with the second amendment complaint. And also, they make the argument, and I think they're also correct, that we don't suggest here that there was an argument that they could have made related to the second amendment complaint that they're not making here, and therefore, they waived it. We're not asserting that. We are making that argument about some issues related to the first amendment complaint that were disposed of there related to the other. We'll let them address that. Yeah. But so they've argued that it's moot. I believe that that's correct.  Thank you, counsel. I appreciate your arguments today. We'll give you two minutes for rebuttal. Thank you. I'd like to address the Brady claims, because opposing counsel's arguments repeatedly rely on drawing inferences in their favor that they're not entitled to at this stage. When you look, they're not entitled to the inference that Sandoval would have made that her description was different. They're not entitled to the inference that the officers are all telling the truth or that their notes don't hide the exculpatory evidence. These are all, as long as we have pled our allegations properly, these are factual disputes for later. And our Brady allegations are solid here. We have a complaint that alleges what was suppressed, a sketch and a recording. We have a complaint that alleges that the evidence was favorable and gives you reasons why you should un ‑‑ why that's a plausible allegation, that her identification was absolutely wrong, that the defendants suppressed the evidence, that the defendants suppressed even the existence of the evidence. These are, you know, by not documenting it. Those support that it was favorable. And then, as Your Honor pointed out, the only other thing we have to prove is prejudice. You don't get into the Youngblood stuff if we can allege ‑‑ I'm sorry, not prove, but allege prejudice. And here, we allege that it prevented defendant ‑‑ plaintiff from impeaching Sandoval and from impugning the entire investigation by not having ‑‑ by not having that sketch and the audio recording with which they could have impeached Sandoval's testimony. So I think there are very clearly Brady claims here. I'd also like to remind the Court that Sandoval's description doesn't necessarily support arson. I mean, what she described was somebody dropping a bag off. Somebody who was the tenant's age, probably an ex-boyfriend, dropping things off. Could have dropped a cigarette. Could have dropped a match. Could have plugged or unplugged something. Could have knocked over a candle. You had what was a ‑‑ what we now know through modern science was likely an accidental fire and a 56-year-old man who had no criminal record whatsoever who was sentenced to life in prison and served 16 years because the defendants showed up and without ever setting foot in the building said, this is an arson. We ask that the plaintiff be allowed to go forward with some of these claims. Thank you. Thank you very much for the helpful arguments. The case just argued will be submitted.
judges: Schroeder, Watford, Illston